# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CASE NO. _____ |
| | : | |
| | : | **UNDER SEAL** |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAVIER ALGREDO VAZQUEZ, | : | |
| | : | |
| | : | |
| Defendant. | : | |
| | : | |

## AFFIDAVIT OF SPECIAL AGENT ADAM J. CIRILLO IN SUPPORT OF
## AN APPLICATION FOR A CRIMINAL COMPLAINT AND ARREST WARRANT

I, Adam J. Cirillo, being duly sworn, hereby depose and state the following:

### INTRODUCTION AND AGENT BACKGROUND

1.  I am a Special Agent with the United States Department of Justice, Drug Enforcement Administration ("DEA"), and have been since December 2019. I am currently assigned to the Los Angeles Field Division, Financial Investigations Group. Prior to becoming a DEA Special Agent, I was a sworn law enforcement officer with the Cobb County Police Department in the State of Georgia. I completed the DEA Training Academy at Quantico, Virginia, which is a 17 week intensive course focusing on criminal investigative techniques for disrupting and dismantling drug organizations. I also attended a 23 week police academy in Cobb County, Georgia. I have received training on drug identification, money laundering techniques, patterns of drug trafficking, complex conspiracies, the exploitation of narcotics traffickers' telecommunications devices, surveillance, and other investigative techniques.

2. I have participated in investigations into the unlawful possession with intent to distribute and distribution of narcotics and controlled substances, the laundering of narcotics proceeds, trafficking of controlled substances and listed (precursor) chemicals, and conspiracies associated with narcotics offenses. I am familiar with narcotics traffickers' methods of operation, including the manufacturing, storage, transportation, and distribution of narcotics, and the collection and laundering of money that represents the proceeds of narcotics trafficking. I am also familiar with the manner in which narcotics traffickers transport and distribute narcotics in areas they control.

3. This affidavit is submitted for the limited purpose of establishing probable cause in support of a Criminal Complaint charging JAVIER ALGREDO VAZQUEZ (hereinafter, "ALGREDO VAZQUEZ"), with conspiring to knowingly, intentionally, and willfully manufacture and distribute five hundred (500) grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, knowing, intending, and having reasonable cause to believe that such substance would be unlawfully imported into the United States, in violation of 21 U.S.C. §§ 959(a) and 960(b)(1)(H); all in violation of 21 U.S.C. § 963 and 18 U.S.C. § 2.

4. It is unlawful "to manufacture or distribute a controlled substance in schedule I or II . . . intending, knowing, or having reasonable cause to believe that such substance . . . will be unlawfully imported into the United States or into waters within a distance of 12 miles of the coast of the United States." 21 U.S.C. § 959(a). Pursuant to 21 U.S.C. § 963, "any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." Further, pursuant to 18 U.S.C. § 2, "Whoever commits an offense against the United

States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."

5. Additionally, 21 U.S.C. § 959(c), establishes that Section 959 is "intended to reach acts of manufacture or distribution committed outside the territorial jurisdiction of the United States." Pursuant to 18 U.S.C. § 3238, there is statutory venue in the District of Columbia for "all offenses begun or committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district" where the defendant is arrested or is first brought.

6. The information contained within this affidavit is based upon my own investigation and upon information provided to me by other law enforcement officers. Where conversations or statements of others are related herein, they are related in substance and in part. In some instances, the communications described in this affidavit were originally made in Spanish; in those cases, my knowledge is derived from draft English translations. Moreover, because this affidavit is submitted for a limited purpose, I have not set forth every fact that I have learned in the course of the investigation.

## PROBABLE CAUSE

7. The DEA has an extensive, long-term, and ongoing investigation into the drug trafficking and money laundering activities of a drug trafficking organization ("DTO") based in Jalisco, Mexico known as the Cartel de Jalisco Nueva Generacion or the CJNG ("CJNG"). The CJNG is one of the largest and most violent DTOs operating in Mexico. The CJNG is responsible for trafficking tonnage quantities of cocaine, methamphetamine, and illicit opioids into the United States. During the course of the investigation, DEA agents identified several individuals that use seemingly legitimate companies in Mexico and the United States to acquire chemicals for CJNG from companies in China, India, and elsewhere. These individuals then

import the chemicals into Mexico, where they are distributed and used by CJNG and other Mexican DTOs to manufacture methamphetamine. That methamphetamine is then imported into the United States.

8. On March 2, 2021, a federal grand jury in the District of Columbia returned a sealed indictment against two of these individuals—Co-conspirator 1 and Co-conspirator 2. In the indictment, Co-conspirator 1 ("CC1") and Co-conspirator 2 ("CC2") were charged with one count of conspiracy to manufacture and distribute 500 hundred grams or more of methamphetamine for importation into the United States and one count of conspiracy to distribute a listed chemical for the manufacture and unlawful importation of a controlled substance. DEA agents have identified a third individual involved in the acquisition and distribution of chemicals used by CJNG to manufacture methamphetamine, Javier ALGREDO VAZQUEZ ("ALGREDO VAZQUEZ").

9. During the investigation, DEA has developed several confidential sources and cooperating witnesses. ▮▮▮▮▮▮▮▮▮▮ CW-1 positively identified ALGREDO VAZQUEZ in a photograph. CW-1 obtained precursor chemicals from ALGREDO VAZQUEZ and CC1 starting in approximately 2011. CW-1 first met ALGREDO VAZQUEZ in-person in approximately 2013 or 2014 at a meeting in Guadalajara, Mexico. CC1 and CC2 were also present at this meeting. According to CW-1, CC1 introduced ALGREDO VAZQUEZ and

---

[1] ▮▮▮▮▮▮▮▮▮▮ During the period of CW-1's cooperation, CW-1's information has never been found to be false or misleading.

explained that they (ALGREDO VAZQUEZ and CC1) were working together to import chemicals from China to Mexico. At the meeting, ALGREDO VAZQUEZ agreed to sell CW-1 and CC2 "iron" and "dulce"—two chemicals used to manufacture methamphetamine, according to CW-1.[2] ALGREDO VAZQUEZ provided CW-1 and CC2 with shipments of the two chemicals from the meeting until approximately September 2016. On two occasions, CW-1 paid ALGREDO VAZQUEZ for chemicals with methamphetamine. ALGREDO VAZQUEZ told CW-1 that he had a route that he could use to transport the methamphetamine to Texas for sale.

10. Based on conversations with ALGREDO VAZQUEZ and CC1, CW-1 knows that ALGREDO VAZQUEZ lives in the United States and owns a chemical company in the United States. CW-1 also knows that CC1 owns chemical companies that he uses to import chemicals to Mexico.

11. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ CS-1 positively identified ALGREDO VAZQUEZ in a photograph. CS-1 met ALGREDO VAZQUEZ approximately three times in 2014 and 2015. The first meeting was in December 2014 at ALGREDO VAZQUEZ's ranch near Puente Grande, Jalisco, Mexico. CS-1 placed an order with ALGREDO VAZQUEZ, ▉▉▉▉▉▉▉▉▉▉ for "dulce" and "loquera"—two chemicals used to manufacture methamphetamine, according to CS-1. During the meeting, ALGREDO VAZQUEZ told CS-1 that he had a methamphetamine laboratory at the ranch, and ALGREDO VAZQUEZ gave CS-1

---

[2] DEA agents are still working to identify these suspected listed chemicals.
[3] CS-1 has been providing information to law enforcement since 2014. ▉▉▉▉▉▉▉ CS-1 is now being paid by DEA for his cooperation. During the period of CS-1's cooperation, CS-1's information has never been false or misleading.

a tour of the laboratory. ALGREDO VAZQUEZ offered to give the "dulce" and "loquera" to CS-1 free of charge if CS-1 ran the laboratory on ALGREDO VAZQUEZ's property and provided ALGREDO VAZQUEZ with one ton of the finished methamphetamine. CS-1 agreed to this arrangement. At the first meeting, CS-1 also heard ALGREDO VAZQUEZ mention a route that he could use to transport methamphetamine to California for sale and the price for methamphetamine in the United States.

12. According to business records obtained from New York State Division of Corporations, ALGREDO VAZQUEZ is the owner of a company called PRO CHEMIE NEW YORK INC. with an address in Elmhurst, NY. ALGREDO VAZQUEZ also resides in Elmhurst, New York. Based on information obtained from Mexican law enforcement and on information provided by CC1 in a U.S. visa application, CC1 is based in Mexico and operates a Mexican chemical company, MEXICAN COMPANY 1.

13.  [4] These intercepted documents led to the seizure of approximately 22,000 kilograms of oxalic acid in Seabrook, Texas on February 25, 2021. Oxalic acid is a precursor chemical used to manufacture methamphetamine.

---

[4] A bill of lading is a legal document of title issued by a carrier to a shipper that details the type, quantity, and destination of goods being carried. The document also serves as a contract between the carrier and the shipper. Bills of lading for maritime shipments are usually accompanied by documentation of the insurance policy and an invoice. The customer, or receiver of the goods, usually needs an original bill of lading as proof of ownership to take possession of the goods from the ocean carrier.

According to the invoice documents, the sender was PUNJAB CHEMICALS & CROP PROTECTION LTD, and the consignee and "notify party" of the shipment was MEXICAN COMPANY 1. PRO CHEMIE NEW YORK INC., with an address of ▮▮▮▮▮ was listed as the second "notify party" of the oxalic acid shipment. The address provided on the shipment for PRO CHEMIE NEW YORK INC. is a residential property owned by ALGREDO VAZQUEZ and is the registered address for PRO CHEMIE NEW YORK INC. The oxalic acid was shipped by Mediterranean Shipping Company and was seized from Container No. MEDU3835393.

14. ▮▮▮▮▮ From my review of the search warrant returns, I know that ALGREDO VAZQUEZ used the account to conduct business related to PRO CHEMIE NEW YORK INC., including sending an email to PUNJAB CHEMICALS & CROP PROTECTION LTD on April 11, 2021, requesting information regarding Container No. MEDU3835393 that was shipped by Mediterranean Shipping Company. The email stated that the shipment was supposed to reach Veracruz Port on March 9, 2021, but had not arrived. ALGREDO VAZQUEZ signed the email "JAVI VAZQUEZ." On March 15, 2020, ALGREDO VAZQUEZ also used the ▮▮▮▮▮ to send a copy of the PRO CHEMIE NEW YORK INC. business registration, which lists "Javier Algredo" as the registered agent, to another chemical company.

15. ▮▮▮▮▮



16. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

17. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ From my review of the search warrant returns, I know that ALGREDO VAZQUEZ received an email on July 15, 2021, from CC1. In the email, CC1 asks ALGREDO VAZQUEZ to transfer $20,900 to PUNJAB CHEMICALS & CROP PROTECTION LTD. The email included an attachment that was a commercial invoice dated June 29, 2021, issued by PUNJAB CHEMICALS & CROP

PROTECTION LTD.  The invoice indicated that PUNJAB CHEMICALS & CROP PROTECTION LTD sold approximately 22,000 kilograms of oxalic acid, a precursor chemical used to manufacture methamphetamine, to PRO CHEMIE NEW YORK INC. (the consignee) for $20,900, which was destined for Veracruz, Mexico.  On August 23, 2021, DEA seized the shipment of approximately 22,686 kilograms of oxalic acid in Seabrook, Texas.

/

/

/

/

/

/

/

/

/

/

/

/

/

/

/

/

/

/

## **CONCLUSION**

18.     Based on the foregoing facts, I respectfully submit that there is probable cause to believe that, from at least in or about 2011 until the date of arrest, ALGREDO VAZQUEZ did knowingly, intentionally, and willfully conspire with CC1 and CC2 and others to manufacture and distribute five hundred (500) grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, knowing, intending, and having reasonable cause to believe that such substance would be unlawfully imported into the United States, in violation of 21 U.S.C. §§ 959(a) and 960(b)(1)(H); all in violation of 21 U.S.C. § 963 and 18 U.S.C. § 2.

Respectfully submitted,

_____
Adam J. Cirillo
Special Agent
Drug Enforcement Agency

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, this 20th day of September, 2021.

_____
HON. ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA